IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Terry H. Capone, | ) | C/A No. 3:12-3369-CMC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| City of Columbia, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The plaintiff, Terry H. Capone, filed this employment case alleging racial discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq.; violation of 42 U.S.C. § 1983; violation of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, et seq.; and state law violations of the South Carolina Payment of Wages Act, S.C. Code Ann § 41-10-10, et seq.; against his employer, the City of Columbia. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the City of Columbia's motion for summary judgment. (ECF No. 37; Additional Attachments, ECF No. 38.) Capone filed a response in opposition (ECF No. 42; Additional Attachments, ECF No. 43), and the City filed a reply (ECF No. 47). Having reviewed the parties' submissions and the applicable law, the court finds that the defendant's motion should be granted.

**BACKGROUND**

The following facts are either undisputed or are viewed in the light most favorable to Capone, to the extent they find support in the record. Capone is a sixteen-year veteran of the Columbia Fire

Department. Capone challenges the City's promotional testing system as racially discriminatory. He further claims that he was retaliated against for complaining about it, and also that he was paid improperly.

Although he was promoted to Battalion Chief in 2011, Capone believes his promotion was delayed because the City's testing system discriminates against African Americans.

**The City's Promotion Process.** To advance within the fire department, firefighters must undergo a formal assessment process which includes an internal selection committee and a panel of evaluators from other fire departments. Beginning in 2007, William Tomes with the University of South Carolina Institute for Public Service and Policy Research took over the responsibilities for validating and administering the promotion process for Battalion Chiefs. Tomes and his team conducted a validation study which was used in the promotion process in 2009, 2011, and 2012. The study involved a job analysis, review of job descriptions, interviews with employees, and consultation with a racially diverse selection committee consisting of senior fire department staff. As a result, candidates are assessed for certain critical knowledge, skills, and abilities (KSAs).

One component of the promotional process involves a supplemental application, requiring candidates to answer four of six questions. Responses are graded for grammar (worth 20% of the grade) by the USC Institute team and for content (worth 80%) by the Department's selection committee. To advance to the next step of the process, a candidate must achieve a score of 70 on the supplemental application. Grading is anonymous and the graders do not consult among themselves. Graders utilize a rubric that is based on rank specifications and KSAs.

If successful, the candidate then participates in an "in basket" exercise based on KSAs which is designed to test the applicant's ability to organize, prioritize, and delegate employment responsibilities. Again, a rubric is utilized and grading is anonymous.

The third stage of the process requires a candidate to interview with a panel of subject matter experts selected from other fire departments. The USC Institute team selects the questions and provides a rubric to the panel members. All applicants are asked the same questions. Finally, if the candidate achieves a passing score, he or she must undergo a fire ground simulation in which a computer program generates a scenario and the candidate must simulate managing a fire scene. Role players in a separate room respond by radio to the candidate's instructions. All applicants face the same simulation scenario.

Candidates who successfully complete all four stages of the promotional process are interviewed by the fire chief, who asks the same general questions of each. Applicants are then ranked by total score, and selections for vacant Battalion Chief positions are made based on the applicant's position on the promotion list.

**Capone's claims.** Capone asserts that he complained about the fairness of the promotional testing. After that, he was cited for various work-related violations, including an alleged violation of the Health Insurance Portability and Accountability Act ("HIPAA") and allegedly speeding in a fire department vehicle. Capone received no disciplinary action regarding the alleged HIPAA violation. The speeding infraction resulted in a letter of counseling which was maintained in his personnel file.

Additionally, in late 2011 or early 2012, Capone was removed from the voluntary overtime list for thirty days after he complained of sleep deprivation. Capone then obtained a letter from his physician clearing him for overtime work.

## DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis in original) (internal quotation marks and citation omitted). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party.



Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms.  See id. at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

**B.     Burden Shifting Framework in Employment Cases**

A plaintiff may demonstrate discrimination through direct or circumstantial evidence.  A plaintiff may produce circumstantial evidence and proceed under the McDonnell Douglas burden-shifting framework.  Warch v. Ohio Casualty Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action.  Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010) (Title VII).  The defendant's burden "is a burden of production, not persuasion."  Reeves, 530 U.S. at 142.  Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, "the McDonnell Douglas framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*."  Id. (internal quotation marks and citations omitted).

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was " 'not its true reason[], but [was] a pretext for discrimination.' "  Merritt,



601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Accordingly, the plaintiff's burden of demonstrating pretext " 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.' " Merritt, 601 F.3d at 294 (quoting Burdine, 450 U.S. at 256) (alterations in original); see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 (4th Cir. 2005) (Title VII & 42 U.S.C. § 1981). To meet this "merged" burden, the employee may prove by a preponderance of the evidence that the decision maker's affidavit is untrue or that the employer's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148. However, "if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate. Id. Accordingly, the court must evaluate "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id. at 148-49. "Notwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." Merritt, 601 F.3d at 294-95.

C.     Capone's Claims[1]

   1.     **Disparate Treatment and Retaliation**

Capone alleges five forms of discriminatory treatment by the City. First, he contends that he was removed from the voluntary overtime list. He also alleges that he was required to complete all required credentials prior to being permitted to take the written test for promotion. Third, he complains that he was harassed regarding false workplace violations. Fourth, he claims that he was disqualified for promotions due to shifting certification requirements. Fifth, he claims that white employees were given more overtime, pay raises, and training opportunities than African Americans. (Pl.'s Mem. Opp'n Mot. Summ. J. at 7, ECF No. 42 at 7.)

The elements of a *prima facie* case of discrimination based upon racially disparate treatment are: (1) membership in a protected class; (2) adverse employment action; (3) satisfactory job performance; and (4) different treatment from similarly situated employees outside of the protected class. See Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (citing White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004)). With regard to a claim of discrimination based on an alleged failure to promote, the *prima facie* case generally requires the plaintiff to show: (1) he is a member of a protected class; (2) his employer had an open position for which he applied or sought to apply; (3) he was qualified for the position; and (4) he was rejected under circumstances giving rise to an inference of unlawful discrimination. Evans v. Technologies Applications & Service Co., 80 F.3d 954, 960 (4th Cir. 1996); see also Anderson v. Westinghouse Savannah River

---

[1] The City argues that Capone's claims were not administratively exhausted; however, it appears that they are within the scope of his administrative charge and therefore properly before the court. See Sydnor v. Fairfax Cnty., Va., 681 F.3d 591, 594 (4th Cir. 2012); Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996).



Co., 406 F.3d 248, 268 (4th Cir. 2005). Finally, the requisite elements for a *prima facie* case of retaliation typically include: (1) he engaged in a protected activity; (2) the employer acted adversely against him; and (3) there was a causal connection between the protected activity and the asserted adverse action. Ziskie v. Mineta, 547 F.3d 220, 229 (4th Cir. 2008); Holland v. Washington Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007).

To the extent Capone asserts disparate treatment based upon the five instances of alleged adverse action identified in his memorandum, he cannot establish a *prima facie* case, as he presents no evidence that any similarly situated person outside of his protected class was treated differently. Specifically, he has not identified any comparators that are similarly situated to him in all relevant respects. See Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992) (Title VII & ADEA) (defining "similarly situated");[2] see also Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir. 2010) (stating that "plaintiffs are required to show that they are similar in all relevant respects to their comparator"). Although Capone relies on affidavits from two African-American firefighters formerly employed by the City, neither of those affidavits identifies any specific white employee who was treated more favorably in any manner raised by Capone. (See Lloyd Aff., ECF No. 43-6; Sulton Aff., ECF No. 43-7) (both discussing in general terms that white employees were treated better than African Americans over the course of their careers). Similarly, although Capone mentions in a footnote in his memorandum the names of Mike Harris, Captain Moore, Alpod Williams, and

---

[2] The Fourth Circuit has not issued a published case on this point; however, the following unpublished cases have cited with approval the Mitchell decision: Atkins v. Holder, 529 F. App'x 318, 321 (4th Cir. 2013); Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir. 2010); Forrest v. Transit Mgmt. of Charlotte, Inc., 245 F. App'x 255 (4th Cir. 2007); Heyward v. Monroe, 166 F.3d 332, 1998 WL 841494, at *2 (4th Cir. 1998); Edwards v. Newport News Shipbuilding & Dry Dock Co., 166 F.3d 1208, 1998 WL 841567, at *3 (4th Cir. 1998).



Captain Casola, he fails to offer any evidence as to whether these individuals are similarly situated to Capone so as to permit a valid comparison.³ See, e.g., Causey v. Balog, 162 F.3d 795, 801-02 (4th Cir. 1998) (holding that where race- and age-based animosity could be shown through differential treatment of similarly situated employees, plaintiff's conclusory statements that his employer "treated him less favorably than younger black and white employees of similar rank," "without specific evidentiary support, cannot support an actionable claim for harassment"); Corley v. Louisiana ex rel. Div. of Admin., Office of Risk Mgmt., 816 F. Supp. 2d 297, 316 (M.D. La. 2011) ("In the context of a race discrimination claim where the plaintiff alleges that employees who were not members of the protected class received more lenient discipline for similar violations, the plaintiff must come forward with specific evidence of comparators who were similarly situated.") (citing Lee v. Kansas City Southern Ry. Co., 574 F.3d 253, 259-60 (5th Cir. 2009)).

Capone's failure to promote claim is also deficient because he cannot show that the City's legitimate, nondiscriminatory reason is a pretext for discrimination or retaliation. Although Capone apparently initially relied on the contention that Christopher Kip should not have been promoted before Capone, he wholly fails to refute the City's showing that Kip was qualified for the position of Battalion Chief and makes no attempt to argue that Capone's qualifications were demonstrably superior to Kip's.⁴ See Heiko v. Colombo Savings Bank, F.S.B., 434 F.3d 249, 261-62 (4th Cir.

---

³ The closest Capone comes to identifying a comparator is in his deposition testimony where he asserts that Captain Moore "moved ahead" of him on the list for voluntary overtime. However, no evidence suggests that Captain Moore ever complained of sleep deprivation or any other symptom that could reasonably interfere with the ability to safely work extra hours.

⁴ Additionally, Capone's passing reference in his memorandum to Mike Harris, who Capone's deposition testimony shows was a white employee that was permitted to advance in the testing process despite having failed a component, is unavailing, as the events Capone described occurred in 2004, rendering any claim based on a comparison to Harris untimely.



2006) ("When a plaintiff asserts job qualifications that are similar or only slightly superior to those of the person eventually selected, the promotion decision remains vested in the sound business judgment of the employer. But where . . . the plaintiff has made a strong showing that his qualifications are demonstrably superior, he has provided sufficient evidence that the employer's explanation may be pretext for discrimination.") (internal citations omitted).

Indeed, the thrust of Capone's argument regarding most of these alleged adverse acts appears to be in connection with his retaliation claim. (See, e.g., Pl.'s Mem. Opp'n Mot. Summ. J. at 6-9, 15-18, ECF No. 42 at 6-9, 15-18.) Again, however, even assuming Capone can establish a *prima facie* case of retaliation,[5] his claim fails because he has not refuted the City's stated legitimate, nondiscriminatory reason for taking each of those actions, and he cannot show that but for protected activity, he would not have experienced the alleged adverse act. See Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2533, 2534 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation," which requires "a plaintiff making a

---

[5] Capone's ability to show that the so-called disciplinary measures in the form of a HIPAA inquiry and a letter of counseling for speeding constitute a materially adverse action is questionable. See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (explaining that to fall within the antiretaliation provision's protection, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination' ") (quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). Likewise, his ability to establish a causal connection on this record by combining a series of apparently unrelated events into an alleged pattern of retaliatory conduct is problematic. Cf. Lettieri v. Equant Inc., 478 F.3d 640, 650-51 (4th Cir. 2007) (discussing a pattern of retaliatory conduct where regularly occurring intervening events involving two supervisors over a seven-month period including, for example, stripping the plaintiff of job responsibilities which made it easier to later indicate that the plaintiff was not needed and should be terminated, and where evidence suggested their proffered reason for terminating the plaintiff, that her position was redundant, was false). However, the court need not decide these issues because Capone's retaliation claim fails for other reasons as discussed below. Accordingly, for purposes of this motion, the court will assume the *prima facie* case has been met with regard to retaliation.



retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer.").

First, he presents no evidence that his promotion was delayed because of retaliatory animus based on his prior protected activity. Rather, the unrefuted evidence supports the City's legitimate, nondiscriminatory explanation that Capone was placed on the promotion list in accordance with his overall score. While Capone intimates that his score was downgraded by Chief Aubrey Jenkins and Assistant Chief Jamie Helms in retaliation for his prior complaints of discrimination, he offers no evidence to support his conjecture in this regard—certainly nothing that would establish that but for his complaints, his score would have been higher than the person ahead of him on the promotion list.

Similarly, he cannot show that the legitimate nondiscriminatory reasons put forth by the City for the HIPAA inquiry and the letter of counseling for speeding were a pretext for retaliation, or that but for his complaints of discriminatory treatment, those events would not have occurred. Rather, the unrefuted evidence shows that both of these occurrences stemmed from complaints from persons not in the command staff. Moreover, the City presents evidence in support of its motion that other firefighters were similarly cautioned regarding speeding in department vehicles. Significantly, Helms issued the letter of counseling for the speeding violation approximately fifteen months after Capone was *promoted* to Battalion Chief. Cf. EEOC v. TJX Companies, Inc., No. 7:07-cv-66-F, 2009 WL 159741, at *8 (E.D.N.C. Jan. 22, 2009) (finding that the fact that the plaintiff was promoted during the intervening time period between her protected activity and her termination negates the inference of discrimination). As for Capone's assertion that the HIPAA issue was unnecessarily resurrected six months after the initial complaint, Capone concedes that no disciplinary action was taken against him and utterly fails to show that this was connected in any way to protected



activity. Accordingly, no reasonable jury could find that the second inquiry regarding the HIPAA complaint was caused by retaliatory animus. Aside from his speculation that these actions were retaliatory, Capone presents nothing to show that the City's proffered reasons for each of the actions of which he complains are pretextual. Nor has Capone presented sufficient evidence from which a reasonable jury could find that but for his protected activity, he would not have been removed from the voluntary overtime list. Accordingly, his retaliation claims fail as a matter of law.

### 2.     Disparate Impact[6]

A "plaintiff establishes a *prima facie* disparate-impact claim by showing that the employer uses a particular employment practice that causes a disparate impact on one of the protected bases." Lewis v. City of Chicago, 560 U.S. 205, 212 (2010) (internal quotation marks and citation omitted); see also Ricci v. DeStefano, 557 U.S. 557, 577-78 (2009) (discussing requirements to establish a disparate impact claim). "The evidence in these 'disparate impact' cases usually focuses on statistical disparities, rather than specific incidents, and on competing explanations for those disparities." Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 987 (1988).

> Proof of disparate impact requires reliable and accurate statistical analysis performed by a qualified expert. As the Supreme Court has noted, "the inevitable focus on statistics in disparate impact cases" results in a very "high standard[ ] of proof" that can be difficult for plaintiffs to meet. Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 992, 999 (1988). Merely pointing to "statistical disparities in the employer's work force" is not sufficient; the plaintiff must provide "statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." Id. at 994.

EEOC v. Freeman, 961 F. Supp. 2d 783, 786 (D. Md. 2013).

---

[6] Capone's Complaint also appears to assert a claim of disparate impact based upon 42 U.S.C. § 1983; however, such a claim cannot be brought under that statute. Foster v. Wyrick, 823 F.2d 218, 221-22 (8th Cir. 1987).



Capone has presented no expert testimony providing a reliable and accurate statistical analysis. (Tomes Dep. at 75:19-77:10, ECF No. 38-5 at 39-41 (testifying that the sample size is too small for a valid analysis)). Accordingly, he cannot establish a claim for disparate impact.

**3.     Wage Claims**

Capone's claims under the Fair Labor Standards Act and the South Carolina Payment of Wages Act are apparently based on his allegation that he is owed $13,000 in overtime pay because the City failed to pay him one and half times the regular rate of pay for each hour worked over forty hours. (See Am. Compl. ¶¶ 42-44, 46-48, ECF No. 20 at 9.) Additionally, Capone testified in his deposition that he believes the City miscalculated his overtime pay when he was a captain and that he should be accruing overtime as a Battalion Chief. However, the FLSA does not mandate what Capone seeks. In fact, the FLSA and its regulations contain provisions specifically addressing firefighters like Capone who are compensated on a fourteen-day pay schedule.[7] See 29 U.S.C. § 207(k)(2); 29 C.F.R. § 553.230(c).[8] Additionally, despite Capone's contention to the contrary, the claims he purports to assert under the South Carolina Payment of Wages Act are preempted by the FLSA or are otherwise unavailable under the Act. See Anderson v. Sara Lee Corp., 508 F.3d 181, 194 (4th Cir. 2007); Nimmons v. RBC Ins. Holdings (USA), Inc., C/A No. 07-2637, 2007 WL 4571179 (D.S.C. Dec. 27, 2007); (see also Def.'s Reply Mem. Supp. Mot. Summ. J. at 7, ECF No. 47 at 7).

---

[7] Notably, Capone inquired of the federal Department of Labor about the calculation of overtime pay, and the Department of Labor confirmed that the City's policy correctly compensated him for overtime. (ECF No. 37-7; Capone Dep. 16:6-17:8, ECF No. 38 at 10-11.)

[8] Capone does not address these provisions or in any way show that they are inapplicable.



## RECOMMENDATION

Capone has not presented evidence substantiating his assertion that the City's promotion process is discriminatory or that he was treated differently than any person outside his protected class. Similarly, he has not presented evidence from which a reasonable jury could find that the City retaliated against him because of his complaints. Further, his wage claims fail as a matter of law. Accordingly, the court recommends that the defendant's motion for summary judgment (ECF No. 37) be granted.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

December 2, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).