IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Terry H. Capone, | ) | C/A No. 3:12-3369-CMC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| City of Columbia, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Through this action, Plaintiff, Terry H. Capone ("Capone") seeks recovery from his employer, the City of Columbia ("the City"), for alleged racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). Capone's claims focus on the City's delay in promoting him to the position of Battalion Chief.[1] Capone alleges the delay was due, at least in part, to a discriminatory "promotional testing scheme[.]" Objection at 1 (ECF No. 50). Capone also alleges that he was subjected to retaliatory discipline after he made complaints about perceived discrimination. *Id.* Finally, he alleges he was denied overtime pay to which he was entitled. *Id.*

The matter is before the court on the City's motion for summary judgment. ECF No.37. For the reasons set forth below, the City's motion is granted in full.

---

[1] Capone filed his prerequisite charge of discrimination in November 2011. ECF No. 43-10. At that time, he was on the list for promotion to the position of Battalion Chief but had not yet been promoted. *Id.* at 1. As noted in the Report, Capone was subsequently promoted. Report at 2; *see also* Objection at 2 ("adopt[ing] by reference all facts as stated by the Magistrate Judge's Report and Recommendation, unless specifically objected to herein"); Amended Complaint ¶ 8 (alleging Capone was promoted in July 2012).

## PROCEDURAL BACKGROUND

In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B)(2)(g), D.S.C., this matter was referred to United States Magistrate Judge Paige J. Gossett for pre-trial proceedings and a Report and Recommendation ("Report"). On December 2, 2014, the Magistrate Judge issued a Report recommending that the City's motion for summary judgment be granted in full. Report, ECF No. 48. The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so.

Capone filed timely objections on December 12, 2014, arguing that summary judgment should be denied as to all of his claims. ECF No. 50. The City responded on December 23, 2014, urging the court to adopt the Report in full and grant summary judgment on all claims. ECF No. 51.

## STANDARD

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of any portion of the Magistrate Judge's Report and Recommendation to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). In the absence of a specific objection, the court reviews the Report and Recommendation only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation") (citation omitted).

**DISCUSSION**

To constitute a "specific objection" warranting *de novo* review, an objection must be made with "sufficient specificity so as reasonably to alert the district court to the true ground for the objection*.*" *U.S. v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007) (addressing specificity requirement in context of determining whether issue was preserved for appeal). To require less, would "defeat the purpose of requiring objections," because judicial resources would be wasted and the district court's effectiveness would be undermined." *Id.*; *see also Orpiano v. Johnson,* 687 F.2d 44, 47 (4th Cir. 1982) (court not required to conduct a *de novo* review when presented with only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations").

Although it is clear from his objections that Capone disagrees with each of the Magistrate Judge's recommendations, Capone has not provided the degree of specificity necessary to entitle him to a *de novo* review. This is because Capone's objections do little more than identify the recommendations to which he objects, followed by a superficial (and often inaccurate) characterization of previously cited evidence and arguments offered in his memorandum in opposition to summary judgment.

For example, Capone's first objection challenges the recommendation that the court find he "cannot establish a *prima facie* case as it relates to comparing himself to a similarly situated individual outside of his protected class." ECF No. 50 at 2. The entirety of Capone's objection to this recommendation point is as follows:

> Plaintiff presented evidence on the issue of whether or not he was treated differently than similarly situated individuals who were not African American. For example, Plaintiff directly compared himself to the following white firefighters:

>Mike Harris, Captain Moore, Alpod Williams, and Captain Casola. Like Plaintiff and by virtue of his testimony, Plaintiff described how some of these men competed with him in the promotional testing process and were placed ahead of him on the promotional list. By virtue of the requirements for the testing process and based upon the theory of the testing as described by Tomes, the participants, before being scored, are similarly situated in their respective positions and lines of work because they are vying for the same promotion.
>
>Plaintiff's testimony and proffered evidence refutes the contention that he failed to establish the comparator prong of the prima facie test.

ECF No. 50 at 3.

This objection is too general to warrant *de novo* review because it fails to provide any detail as to why the four listed firefighters should be held to be appropriate comparators (and, consequently, why the Report erred in concluding they were not). Instead, it merely advises the court that Capone identified four white firefighters "some" of whom "competed with [Capone] in the promotional testing process and were placed ahead of him on the promotional list." The objection does not indicate (1) which of these proposed comparators competed with Capone (he only indicates that "some" of them did), (2) for which positions they competed, or (3) how their scores and other qualifications for the particular position compare (he relies, instead, on the assumption they are "similarly situated . . . because they are vying for the same promotion). Neither does Capone cite any supporting evidence or legal authority for his abbreviated argument.[2]

Capone's arguments on other issues are similar as they, at most, summarize the recommendations in the Report, state that he disagrees with the recommendation, and provide a

---

[2] In a footnote, Capone states that "[a] copy of all deposition testimony and exhibits *cited herein* were submitted" with his prior opposition memorandum and "craves reference" to the same "as if attached hereto and resubmitted." ECF No. 50 at 1 n.1 (emphasis added). Capone does not, however, cite any supporting evidence at any point in his objection memorandum. Neither does he direct the court to any legal authority or even specific pages of his prior memorandum. In fact, his only citations are to the Report.

superficial characterization of his prior arguments.[3] For example, Capone's entire argument on the Wage Claim is as follows:

> The honorable Magistrate Judge argues that the FLSA addresses firefighter overtime pay and because of that, Plaintiff does not have a claim for unpaid overtime because his schedule was reflective of that outlined by the FLSA for firefighters. (Dkt. No. 48, p. 13). However, Plaintiff provided sufficient evidence that the rate and way in which he was paid did not align with the FLSA mandates, specifically through the calculations Plaintiff made in response to Defendant's discovery.

ECF No. 50 at 6.

Despite their length, Capone's objections provide the court with no greater specificity than had he stated: "I disagree with each and every one of the Magistrate Judge's conclusions, and I do so for the reasons I argued in my memorandum in opposition to summary judgment." This amounts to no more than a general objection because it is impossible to draw meaning from Capone's objections without a review of his entire prior submission. As noted above, allowing such an approach would defeat the purpose of requiring specific objections as a prerequisite to *de novo* review because it would increase, rather than decrease, the burden on the judiciary, thus defeating the purpose of the magistrate judge system.[4]

For these reasons, the court finds Capone is not entitled to a *de novo* review. In an abundance of caution, the court has, nonetheless, conducted a full *de novo* review. Having done so, the court concludes that the Report was correct both in its reasoning and recommendations.

---

[3] As explained below under the court's alternative ruling (§ II), Capone's characterizations of his prior arguments are often inaccurate and are not, in any event, persuasive.

[4] The inadequate specificity is particularly troubling given that Capone is not only represented by counsel, but by counsel with substantial experience in employment litigation. Given this district's routine referral of such matters to a magistrate judge for pretrial proceedings, counsel should be well aware of the need for specificity in any objection to a report and recommendation.

In reaching this conclusion, the court has taken each of Capone's generalized objections, searched his prior opposition memorandum for supporting arguments and citation to evidence, and considered those arguments and cited evidence as if presented to this court in a specific objection. Having undertaken this duplicative and time-consuming process, the court finds no support for any of Capone's objections for reasons explained below.

### A.     Disparate Treatment and Retaliation – *Prima Facie Case*

**Report.** The Report recommends summary judgment be granted on Capone's disparate treatment claim because he has "present[ed] no evidence that any similarly situated person outside of his protected class was treated differently" and cannot, therefore, establish a *prima facie* case. "Specifically, he has not identified any comparators that are similarly situated to him in all relevant respects." Report at 8 (ECF No. 48). The Report addresses two affidavits of *former* firefighters on which Capone relies, noting that neither affidavit "identifies any specific white employee who was treated more favorably in any manner raised by Capone." *Id.*[5] The Report also notes Capone's mention in a footnote of the names of four individuals (Mike Harris, Captain Moore, Alpod Williams, and Captain Casola), explaining that Capone "fails to offer any evidence as to whether these individuals are similarly situated to Capone so as to permit a valid comparison." *Id.* at 8-9.[6]

---

[5] The two affidavits are from firefighters who retired in 2008 and 2009 respectively. Thus, even the general observations of these firefighters relate to a period distant from the one at issue: a selection process and alleged retaliation during 2011.

[6] As the Report explains in a footnote, the "closest Capone comes to identifying a comparator is in his deposition testimony where he asserts that Captain Moore 'moved ahead' of [Capone] on the list for voluntary overtime." Report at n.3. The Report finds this testimony inadequate to support use of Captain Moore as a comparator because Capone does not address any other factor necessary to establish that he and Captain Moore were similarly situated with respect to overtime eligibility at the time Moore was "moved ahead" of Capone. *Id.* (noting, in particular, the absence of evidence to suggest Captain Moore ever complained of sleep deprivation). In another footnote, the Report acknowledges Capone's passing reference to Mike Harris in his memorandum but notes that the related testimony refers to events that occurred in 2004, well before the alleged discrimination at issue in this action. *Id.* at n.4.

**Objection.** In his objection memorandum, Capone argues that he previously presented evidence that "he was treated differently than similarly situated individuals who were not African Americans." ECF No. 50 at 3. In support of this claim, Capone asserts that he "directly compared himself to the following white firefighters: Mike Harris, Captain Moore, Alpod Williams, and Captain Casola." *Id.* (asserting that his deposition testimony "described how *some* of these men competed with him in the promotional testing process and were placed ahead of him on the promotional list." (emphasis added)). Capone argues that he and these alleged comparators were similarly situated because "the participants, before being scored, are similarly situated in their respective positions and lines of work because they are vying for the *same* promotion." *Id*. (emphasis added).

**Discussion.** Even taken at face value, Capone's argument would not support a claim of discrimination because it would effectively eliminate the requirement for similarly situated comparators by assuming that all individuals vying for the same promotion through the same process are similarly situated. If this were enough, every denial of a promotion would support a *prima facie* case of discrimination so long as the individual promoted was from outside a protected class to which at least one individual who was not selected belonged. The argument also fails for its grab-bag approach to proof, relying on a claim that "some" unidentified member of a group of four individuals competed with and was placed ahead of Capone on a list for some unidentified promotion.

Nothing in Capone's memorandum in opposition to summary judgment suggests greater specificity. Other than a deposition excerpt discussing Captain Moore's placement on the overtime list in the context of his retaliation claim, Capone's only mention of these individuals (or the word "comparator") is found in a footnote which reads, in full, as follows:

7

> Defendant also argues that Plaintiff fails to identify any comparators. (Dkt. No. 37-1 at p. 11). Plaintiff testified that – as it relates to the testing process, the overtime issue, certification changes for promotion, and raise increases – that four white people were treated better than he was by Defendant: Mike Harris, Captain Moore, Alpod Williams and Captain Casola. (Exhibit A at pps. 11:13-12:15; 79:8-80:1; 113:12-114:3; 114:4-13).

ECF No. 42 at 12 n.6. Thus, in this footnote, Capone names four individuals he suggests are comparators as to four different areas of disparate treatment (testing, overtime, certification, and raises). Capone supports the claimed comparability by collectively citing a total of six pages of his deposition, which he neither quotes nor summarizes. He offers nothing to link any specific individual to the alleged categories of disparate treatment.

The cited pages do not, in any event, support treating any of the four individuals as comparators for any purpose. The excerpt from pages 11-12 of Capone's deposition addresses Captain Moore's possibly preferential treatment on the overtime list, but fails to give enough information to suggest the two were similarly situated at the time.[7] The excerpt from pages 79-80 describes an event in 2004 when Mike Moore was allowed to advance toward promotion despite failing a test. Not only does this testimony relate to a period of time beyond the scope of this lawsuit, but there is no testimony suggesting that Capone was treated differently even at that time with respect to the same issue (*i.e.*, that Capone also failed but was not allowed to advance). The excerpt from pages 113-14 refers to a white employee receiving a larger raise than Capone, even

---

[7] In these pages, Capone testifies that Captain Moore was "moved ahead" of Capone on the overtime list "for one day prior to" when Capone was taken off the overtime list for 30 days due, apparently, to his report that he was taking medication to help him sleep while he was off the job. *Id.* The quoted material does not explain whether the one-day move occurred before Capone reported difficulties with sleep deprivation and that he was taking medication to help him sleep. Neither does it address any other factors that might explain any similarities or dissimilarities between Moore and Capone with respect to their eligibility and priority for overtime. In sum, it does no more than suggest the possibility that there may have been one day when Moore was treated more favorably that Capone.

8

though Capone had taken recommended classes and the white employee "didn't do anything." The white employee is not named and no other details as to similarities and dissimilarities is provided. No specific date is provided although this portion of Capone's deposition appears to address events that occurred between 2004 and 2008.[8]

In sum, Capone has identified four individuals as possible comparators. He has not, however, directed the court to evidence that would support a finding that any one of them was similarly situated to Capone with respect to any specific incident of alleged disparate treatment. This is despite the City raising the issue in its motion for summary judgment and the Report relying on this deficiency in recommending summary judgment be granted.

### B.     Disparate Treatment and Retaliation – Pretext

**Report.** The Report also recommends summary judgment be granted on Capone's disparate treatment and retaliation claims because Capone has not proffered evidence sufficient to establish that the City's stated legitimate, nondiscriminatory reasons for its actions were pretextual. Report at 9-12. With respect to the delayed promotion, the Report notes that Capone "wholly fails to refute the City's showing" that Christopher Kip was qualified and made "no attempt to argue that Capone's qualifications were demonstrably superior to Kip's." *Id.* at 9.

---

[8] Later on page 114, Capone identifies Altarr Williams (not Alpod Williams) as the "white male" referenced on page two of his EEOC charge. Page two of the EEOC charge refers to a white male who received a promotion, though which promotion is not clear. Thus, read together, the EEOC charge and deposition testimony may refer to an Altarr Williams as a possible comparator for purposes of the delayed promotion claim, but, again, no further detail is given as to similarities and dissimilarities or even the specific position at issue. Altarr Williams also does not appear to be one of the four individuals Capone identified in his footnote listing of comparators, unless Altarr Williams and Alpod Williams are the same person, which is not suggested in this testimony.

**Objection.** As to the delayed promotion, Capone argues that he "fully explained his superior qualifications for the promotion in his deposition testimony and . . . reiterated [that] Kip should not have been permitted to sit for the initial test due to class certification issues." ECF No. 50 at 3. As with his other arguments, Capone fails to provide any citation to supporting evidence or prior argument.

Capone's argument as to his retaliation claim is similarly generic. He challenges the Report's conclusion that there is no evidence of pretext by stating that, although he received the letter of counseling for the alleged HIPAA violation after his promotion, "it was one of several instances of which Plaintiff pointed to during his [deposition] to show that he was singled out for treatment after complaining of the promotional testing issue (in addition to the HIPAA inquiry and his removal from the overtime list that was continuous even after his submission of a doctor's note)." ECF No. 50 at 4. Without further explanation or citation to evidence, Capone concludes that "these pieces of evidence and testimony . . . show that Defendant's legitimate, nondiscriminatory reason was pretext for its actions against [Capone's] personnel file and his ability to achieve overtime through the volunteer list."

**Discussion**. The court has searched Capone's earlier memorandum in opposition to summary judgment for any discussion of Capone's and Kip's relative qualifications and finds none. Kip is not, in fact, mentioned in Capone's memorandum in opposition to summary judgment. Instead, the only discussion of qualifications in this memorandum is found in a generic reference to Capone's qualifications for the positions for which he applied, followed by a string citation to his deposition. This brief discussion reads as follows:

> Secondly, Plaintiff has testified and provided a plethora of evidence to suggest that he was more than qualified for the positions he sought through the supplemental

> testing program – at least up to and until the position certifications were sporadically changed by the Command Staff. (Exhibit J, Charge of Discrimination; Exhibit A at p. 34:2-3; 53:15-20; 56:14-57:19; 60:18-22; 90:18-22; 112:18-114:3).

ECF No. 42 at 12.

Despite the generic nature of this statement and the undifferentiated string citation to the record, the court has examined each citation for evidence that Capone was more qualified than any person placed ahead of him on the promotion list (most critically, Kip). Having done so, the court finds neither any specific reference to Kip nor any other discussion of Capone's qualifications relative to any other person on the list of persons eligible for promotion to Battalion Chief.[9]

The court has also searched Capone's memorandum in opposition to summary judgment for support for his claim that the City's proffered reasons for the allegedly retaliatory actions were pretextual. Capone "denied any wrongdoing to warrant discipline and specifically stated that the investigation was reopened months after the alleged incident occurred after he complained of race discrimination." ECF No. 42 at 12 (memorandum in opposition to summary judgment citing deposition pages 48-49, 123). The cited deposition pages question why two incidents were raised

---

[9] The excerpts may be summarized as follows: Capone had all of the certifications necessary for promotion before tests and he *believes* some white employees were allowed to take tests without the same certifications (p. 34); Capone applied for other positions (p. 53); Capone met the minimum qualifications for unspecified positions and changes to the requirements for some positions have made him ineligible after he was otherwise qualified (pp. 56-57); Capone met the certification requirements for the relevant position before taking the test in 2011, but *some* white employees *may* not have and he believes allowing employees to take the test without the certifications gives those employees an unfair advantage (p. 60); he tried to give comprehensive responses to test questions (p. 90); and there have been prior situations where white employees were given a job despite not having required certifications, and subsequently failed to get the certification but were not removed because the certification requirement was changed (pp 112-13); Altarr Williams was the white male mentioned on page two of Capone's EEOC charge (pp. 112-14). Reading page two of the EEOC charge together with the last excerpt above *may* support an inference that Capone competed with Altarr Williams for a position, which was awarded to Williams even though he lacked a required certification. The EEOC charge indicates Capone was also missing one "Special Requirement" for this job at the time he applied. ECF No. 43-10 at 2.

at all, or raised again after being addressed on one earlier occasion. One incident related to an alleged HIPAA violation. The other related to a speeding complaint. As the Report notes and Capone does not contest, neither complaint originated with command staff.

As to the HIPAA violation, Capone's complaint is that it was brought up again after an earlier investigation. Although he questions why this was done, he offers nothing to suggest that the City's reasons for raising the concern a second time were other than as stated by the City. *See* Report at 11 (addressing absence of evidence of pretext as to counseling letters).

Capone's concern regarding the speeding complaint appears to be based on a belief either that it was "made up" or that the person who reported the violation must also have been doing something wrong in order to report him (speeding or following a fire vehicle). Capone does not, however, offer anything other than his own speculation either that there was something questionable about the report or, more critically, that the City acted unreasonably in investigating the report. Capone also failed to identify any adverse action which resulted from the speeding complaint and does not refer to this complaint in arguing that his retaliation claim should survive. *See* ECF No. 42 at 15-18 (addressing removal from overtime list and alleged HIPAA violation).

In sum, nothing in Capone's objection offers any support for his position that the City's stated reasons for its actions were pretextual. Capone's memorandum in opposition to summary judgment, while including some citation to evidence, fails to point to any evidence which would cast doubt on the City's stated legitimate reasons for its action. This objection, therefore, fails.

**C.      Disparate Impact**

Rather than challenging the Report's legal conclusion that the disparate impact claim must be supported by statistical evidence, Capone refers to the testimony of William Tomes, who was

involved in development of the promotion process including the test. Objection memorandum at 5, ECF No. 50. Capone states that "Tomes testified that the written test had undergone several variations over the years, which would support his contention that the sampling size would be too small for a valid analysis." *Id.* This statement does not suggest the existence of statistical evidence supporting the disparate impact claim. It, instead, indicates that no such evidence could likely be obtained. Capone's earlier memorandum in opposition to summary judgment is similarly devoid of any statistical evidence. *See* ECF No. 42 at 11-15 (combining discussion of disparate treatment and disparate impact and assuming both are established through the burden-shifting framework).

Capone also relies on proffered affidavits of two firefighters who retired in 2008 and 2009 as well as his testimony regarding his own experiences. This evidence fails to support a disparate impact claim because it is, at best, subjective and anecdotal (and at worst irrelevant to the time frame at issue). Capone offers no support for his apparent premise that this evidence may substitute for the sort of statistical evidence generally required to support a disparate impact claim.

**D.     Wage Claim**

Capone's objection as to the recommendation that summary judgment be granted on his wage claim is entirely generic, consisting of one sentence summarizing the Report's recommendation and the following response: "Plaintiff provided sufficient evidence that the rate and way in which he was paid did not align with the FLSA mandates, specifically through the calculations Plaintiff made in response to Defendant's discovery." ECF No. 50 at 6.

The Report relied on a specific FLSA regulation applicable to overtime for firefighters in recommending Capone's state and federal wage claims be dismissed. Plaintiff does not mention, much less discuss, this regulation either in his objection memorandum or in his memorandum in

opposition to summary judgment. He has not, therefore, offered any argument that might support a ruling other than that recommended in the Report.

## CONCLUSION

For the reasons set forth above, the court adopts the Report and Recommendation and grants the City's motion in full. Despite absence of objections sufficiently specific to warrant *de novo* review, the court has conducted a *de novo* review. Having done so, the court fully concurs in and adopts the reasoning and recommendations of the magistrate judge for reasons explained above. Judgment shall be entered for the City on all claims.

IT IS SO ORDERED.

                                              s/ Cameron McGowan Currie
                                              CAMERON MCGOWAN CURRIE
                                              Senior United States District Judge

Columbia, South Carolina
January 8, 2015